## NIAGARA FIRE INS. CO. v. POOL et al.
### No. 7466.

Court of Civil Appeals of Texas. Austin.

Oct. 1, 1930.

Rehearing Denied Oct. 22, 1930.

the full amount of the policy. The parties will be designated as in the lower court. The defendant insurance company set up numerous defenses, including denial of the issuance of the policy; fraud and misrepresentation of Mrs. Pool in procuring it; allegations that she was not the sole and unconditional owner of the property insured; that the property burned was not a total loss; that same could be replaced for much less than the amount of the policy; that the proofs of loss submitted were false and fraudulent; that the insured had violated all of the provisions of the policy before and after the fire; thus forfeiting her insurance. The only issues submitted to and answered by the jury were that the residence was a total loss after the fire; that the value of the personal property of Mrs. Pool destroyed by the fire was $3,000; and that the statement of Mrs. Pool, in her proof of loss of the personal property, that she was sole owner thereof, was not made knowingly and willfully for the purpose of defrauding the defendant.

Plaintiff in error presents 69 assignments on which it bases 30 propositions in a brief of 250 pages. We shall not undertake to discuss them in detail, but confine ourselves to the main questions raised.

■ We do not sustain defendant's attack upon the sufficiency of plaintiffs' pleadings. The property burned was described in the pleadings in substantially the same terms, general in nature, that it was in the policy. The insurance company had in its possession a full and complete itemized list of said property furnished it by Mrs. Pool under its own instructions. The plaintiffs alleged in substance that they were unable to designate in detail the separate articles in which Mr. Pool had a community interest; but that such articles were few in number, and that Mrs. Pool owned in her own separate right most of said property; and that the value of the property owned separately by her exceeded the total amount of the insurance provided in the policy. Plaintiffs, under such circumstances, were not required to segregate and establish the separate ownership of each separate article. The defendants had a list of the property involved, were put upon notice of all the facts known to the plaintiffs themselves, and in the very nature of things had to rely on the plaintiffs to determine the matter of ownership.

■ The next and chief issue on the appeal relates to the sole ownership warranty in the policy. The policy provided that it should be void if the interest of the insured in the property be not truly stated therein, or if the interest of the insured therein be other than unconditional and sole ownership. The property was insured as the separate property of Mrs. Pool. Defendant earnestly insists

Lewright & Lewright, of San Antonio, for plaintiff in error.

R. E. McKie and E. M. Cape, both of San Marcos, for defendants in error.

BAUGH, J.

Suit upon a fire insurance policy for $8,000 issued by plaintiff in error to Mrs. Eva B. Pool on her residence and its contents in San Marcos, Tex., $6,000 on the building and $2,-000 on the personal property. Judgment was for the insured upon special issue verdict for

that both the pleadings and the proof show a violation of these provisions which forfeited the policy. The evidence conclusively shows, we think, that Mrs. Pool was the sole owner of the fee to the residence, as her separate property; and that she owned in her own separate right more than 90 per cent. of the personal property in question. The testimony showed that of the total original cost or replacement value of said personalty aggregating some $5,700 or $5,800, only about $250 or $300 was paid for out of community funds. The remainder was either inherited by Mrs. Pool, given to her, or purchased by her out of her separate estate. The property was the homestead of Mrs. Pool and her husband; both of them considered all of said property as the separate property of Mrs. Pool, and the agent who wrote the policy so understood it at the time. The policy was issued to her with the approval of Mr. Pool at the time and he is a party plaintiff. The finding of the jury that the insured personalty constituting the separate property of Mrs. Pool was of the value of $3,000 is supported by the evidence.

We do not deem it necessary to determine whether the policy in question was divisible as between the insurance on the residence and that on the furnishings. The record wholly fails to show any intentional misrepresentation as to the ownership of the property either in obtaining the policy or in making proof of loss. It is clear that the value of Mrs. Pool's separate personalty insured was in excess of the amount of the insurance thereon covered by said policy. The real issue on this point is, therefore, whether the fact that the personal property was insured as owned solely and unconditionally by Mrs. Pool, when in fact a small portion of it was the community property of herself and husband, avoids the policy.

■ The defendant cites and discusses at considerable length many cases sustaining forfeitures for breaches of the sole ownership warranty clause in fire insurance policies, among them particularly Crescent Ins. Co. v. Camp, 71 Tex. 503, 9 S. W. 473; Ins. Co. v. Hunter (Tex. Civ. App.) 32 S. W. 344; Ins. Co. v. McQuary (Tex. Civ. App.) 194 S. W. 491; Ins. Co. v. Whatley (Tex. Civ. App.) 279 S. W. 287; and Ins. Co. v. Farris (Tex. Civ. App.) 297 S. W. 575. It seems now well settled that such representations in a policy are warranties and do not fall within what is known as the "anti-technicality statute." Article 5046, R. S. 1925; Ins. Co. v. Carter (Tex. Com. App.) 257 S. W. 531. But such circumstances, in construing and applying such policy, in no wise affect the long-established rules that the law abhors a forfeiture, and that the policy must be strictly construed against the insurance company. And, even if it be conceded that there be a breach of the warranties of the policy, such breach, to avoid

it, must be of some material or substantial nature, and not merely trivial or inconsequential in character.

■■ The cases cited are instances where the insured, representing himself as sole owner, was a partner only, or a trustee for property belonging to some one else, or a husband who insured as his own the separate property of his wife, or of his children. In such cases there is a distinct and adverse interest of such persons in the title to or ownership of the property itself, and the breach of such warranty was clearly applicable. In those cases the insured did not have a full insurable interest in the property. Such is not the case here. Mrs. Pool was the sole owner of all the realty and all but a small portion of the personalty, and a community owner with her husband of that. There can be no question of her right to insure in her own name her separate property, and though no Texas case has been called to our attention directly in point, as to household furnishings owned in community with her husband, situated in a homestead owned by her solely, and used by them for homestead purposes, we see no valid reason why Mrs. Pool could not insure same in her own right and name. See 14 R. C. L. 917; 26 C. J. 181; State Mut. Ins. Co. v. Green, 62 Okl. 214, 166 P. 105, L. R. A. 1917F, 669; Jones v. Ins. Co., 91 Fla. 565, 108 So. 165. If the policy be treated as indivisible, as insisted by the defendant, we think it would be absurd, and a perversion of justice, to hold that the policy should be avoided for breach of the sole ownership warranty, where Mrs. Pool owned as her separate property at least 98 per cent. of the total property insured, and a community and insurable interest in the remainder.

■ There was submitted to the jury the question of what was the difference, "in actual value," immediately before and immediately after the fire of the personal property belonging to Mrs. Pool, to which the jury answered $3,000. There is no merit in defendant's objections to the use of the term "actual value." The measure of damages for the destruction of, or injury to, personal property is usually the difference between its fair market value immediately before and immediately after such injury. The terms "actual cash value" and "fair market value" are often used as synonymous in such cases. Here insurance company chose its own measure of liability in the language of the policy as that of "actual cash value." Nor was it incumbent upon plaintiffs to show first that there was no market value of said property before they could prove intrinsic value. In the very nature of things personal effects composing the furnishings of a family and household do not, for the most part, have an ascertainable market value; and their value must of necessity be fixed by replacement

cost, with due allowance for depreciation, or by their intrinsic value. We see no material difference in the term "actual value" submitted to the jury and that of "actual cash value" used in the policy. The former was perhaps more appropriate because more comprehensive. Where there was no market value of articles destroyed, the plaintiffs were entitled to recover their intrinsic value; and the term "actual value" is broad enough to include both.

 Testimony of R. C. Reardon, city fire marshal of San Marcos, as to the condition of this building after the fire, was offered on the issue of whether same was a total loss. Mr. Reardon was a member of the fire department participating in the extinguishment of the fire, and afterwards inspected the ruins in his capacity as city fire marshal. Upon objection, his proffered testimony was excluded as being inhibited by article 4899, R. S. 1925.

Article 4899 relates entirely to the state fire marshal, and to those acting for him. Unless Mr. Reardon was acting for the state fire marshal in the premises, or at his request, his testimony with respect to the condition of the ruins after the fire would be admissible. There was no showing whatever that he acted in any such capacity, and in the absence thereof his proffered testimony was improperly excluded. The bill of exception does not show fully just what Reardon would have testified, but what it does show was only cumulative of that of other witnesses offered by defendant itself, or elicited fully from plaintiffs' witnesses on cross-examination.

The residence was a two-story building. It is not controverted that the roof and the second story were completely destroyed; nor that the interior of the walls below were badly burned, the ceilings of the lower story effectively destroyed, and the floors badly damaged, if not rendered entirely useless. Nor do we find any real conflict in the testimony as to the physical condition of the ruins of the building. Only one witness testified that the portion of the building remaining could have been used to replace the original structure. He was an insurance adjuster in the employ of the defendant company, had had no experience as a contractor, and his only experience in building was that as an office architect in New York City for a year and a half in 1900–1901. He made no estimate as to what such reconstruction, using as far as could be done the remains of the burned structure, would cost; nor of the value of the usuable portion of such remains. On the other hand, three experienced building contractors who had examined the remains all testified, in substance, that no part of such remains, unless possibly the foundation, which was of cedar blocks, could be used in place in rebuilding the house. The highest estimate on the value of the salvage was $300, and one contractor testified that the value of salvaged material, fit for use, would not exceed the cost of salvaging it. The lowest estimate of any contractor for replacement of the building, including the use of salvaged material, was more than the full amount of the policy. Nor did the insurance company offer any testimony that said building could be restored for a less sum than the amount of the policy. It is not shown that Reardon knew anything about the cost of replacement of the building, nor that he could or would have testified that the remains could have been reasonably used as a basis for such reconstruction. Under these circumstances, therefore, the exclusion of his testimony was harmless.

Defendant next complains that the opening and closing argument of plaintiffs' counsel was so intemperate and so appealed to the prejudices of the jury, in contrasting the wealth of the insurance company with the poverty of the plaintiffs, that a new trial should have been granted. No objection was made to the argument of counsel at the time and no motion made to declare a mistrial before the jury retired. The objection was first made in a motion for a new trial.

 Where argument of counsel is highly improper, dehors the record, or highly prejudicial in character, opposing counsel are not required to object thereto at the time, but may do so first upon a motion for a new trial. Especially is this true where the argument is of such character that objection to same, or calling the court's attention to same by request that the jury be instructed not to consider it, would only serve to emphasize it in their minds.

 We shall not undertake to set out here the extended arguments complained of. The matters discussed by counsel were already disclosed by the evidence. True, the plaintiffs were referred to as poor, honest, hard-working old people; but such an argument was perhaps warranted in reply to the charge in defendant's answer that they were guilty of false statements in procuring the policy and of false swearing in making their proof of loss. The location of the home office and the amount of the capital stock of defendant company displayed by it as an asset was in evidence, and could properly have been referred to unless done in such manner as to become prejudicial. It is never proper in argument for counsel to refer to nor discuss the poverty of one party in contrast to the wealth of the other, and such arguments have been repeatedly condemned; but it does not follow that such impropriety must necessarily work a reversal of the case. The reasonable test and most pertinent inquiry always is whether or not, under all the circumstances, the verdict of the jury has probably been affected by

854

it. Davis v. Hill, 298 S. W. 526, 528, and numerous cases there cited; D. & H. Truck Line v. Lavallee (Tex. Civ. App.) 7 S. W. (2d) 661, 664. A careful consideration of the record in this case has convinced us that such was not the case. We think the record clearly discloses that as to the residence the policy became a liquidated demand for the amount of insurance thereon. With reference to the personalty, the only evidence of values of the articles burned or damaged was that of Mrs. Pool and a furniture dealer in San Marcos. Mrs. Pool's testimony as to the entire list of such personalty, aggregating an original cost or replacement values new a total amount of approximately $5,800, with a salvage value of only $175, was not contradicted. There was evidence of an actual value at the time of the fire of from $2,800 to $4,000. Nowhere do we find any evidence that the value of the personalty was not in excess of $2,000, the amount it was insured for. Under such circumstances, we find nothing to indicate that the improper argument complained of affected the verdict of the jury.

The foregoing present in the main the only contentions of defendants seriously urged or relied upon. We find no such errors in the record as would in our opinion warrant a reversal, and the judgment of the trial court is affirmed.

Affirmed.