**AMERICAN GENERAL INS. CO. v. BELL.**

No. 13743.

Court of Civil Appeals of Texas. Fort Worth.

April 15, 1938.

Rehearing Denied May 20, 1938.

Thompson & Barwise and Fred Korth, all of Fort Worth, for appellant.

T. W. Dunn, Julien C. Hyer, and A. W. Christian, all of Fort Worth, for appellee.

SPEER, Justice.

Appellee, J. D. Bell, sued appellant, American General Insurance Company, in a district court of Tarrant county, Tex., on a fire insurance policy for $1,000, growing out of a loss by fire of household goods, located in the city of Fort Worth, in a building mentioned in the policy.

Appellee alleged the issuance by appellant of the policy covering his property, the payment of the premiums demanded, the destruction of his goods by fire during the effective life of the contract, the consequent obligation upon the part of appellant to pay, notice and proof of loss to appellant, as pro-

vided in the policy, acceptance by appellant of the notice and proof of loss, and in the alternative, a waiver and estoppel by it of such notice and proof, that none of the exceptions of liability set out in the contract existed, and failure and refusal to pay the loss.

Appellant answered with general demurrer and twenty-nine special exceptions, all of which were overruled by the court, of which no complaint is here made, and by general denial and special pleas in defense against its liability.

Because of the errors assigned by appellant, it will only be necessary to mention certain of its special defenses.

Appellant pleaded the entire policy and contract, which contained, among other things, a provision that the policy should be void: "If the interest of the insured in the property be other than unconditional and sole ownership * * * or if any change other than by death of an insured take place in the interest, title or possession of the subject of insurance." In this connection it alleged that subsequent to the issuance of the policy, the appellee sold and delivered the insured articles to Mr. and Mrs. Engert for a valuable consideration, and that a portion of the purchase price had been paid to appellee by the purchaser, prior to the date of the fire; that because of said sale, appellee was not the unconditional and sole owner of the property, as contemplated by the provisions of the contract above mentioned.

Another provision in the policy, relied upon by appellant, is that unless otherwise provided by agreements indorsed upon the policy, it should be void, "if the hazard be increased by any means within the control or knowledge of the insured." Allegations were made that at the date of the issuance of the policy, the building in which the insured goods were situated was occupied by appellee and his family, and that thereafter and prior to the fire, appellee leased the building and the insured household goods to one Engert, for both a place of residence and one in which to conduct a photograph business; that both the tenancy and character of the business carried on in said building increased and contributed to the fire hazard to said property, all of which was within the knowledge and control of appellee.

It was further alleged in defense of appellee's action, that he had not complied with the provisions of the policy in the matter of making proof of the loss, the substance of which provision is that in case of loss, the owner should protect the insured articles from further loss, as far as possible, make a complete inventory of same, stating the quality and cost of each article and the amount claimed thereon; should render to the company a statement thereof, signed and sworn to by him, stating the origin and time of the fire, his interest and that of any other person therein. It should contain the cash value of each item and the amount claimed as loss thereon. Other provisions set out are not material to a disposition of this appeal.

A jury trial was demanded, and verdict was rendered upon special issues submitted by the court; from the verdict, judgment was entered for appellee in the sum of $750. New trial was denied appellant and it perfected this appeal.

Appellant has presented the case upon a number of points or propositions, based on assignments of error shown. These propositions are in substance: (1) The undisputed evidence shows that appellee was not the sole and unconditional owner of the insured property when the fire occurred, but had sold the insured household goods to another and the latter was in possession under the sale; the court should have instructed a verdict in favor of appellant. (2) The court erred in permitting appellee to testify from a list made by him immediately after the fire as to the value of the goods to him, and that such values were the usual and customary prices charged in the locality of the fire at that time, and constituted the values of replacing the property with material of like kind and quality, and that the court erred in submitting an issue to the jury worded similar to that given in the testimony. (3) The appellant's request for peremptory instruction should have been given when the testimony disclosed the hazard had been increased with appellee's knowledge, by leasing the insured property, as well also by permitting the lessee to conduct a photograph business on the premises. (4) A mistrial should have been declared by the court for a conflict in the answers to special issues, wherein one answer found appellee had agreed to sell the insured goods and another party had agreed to buy, and another answer found appellee was the sole and unconditional owner of the insured goods at the time of their destruction.

We here quote the first special issue, because its wording is the basis of errors assigned. It reads: "Special Issue No. 1. What sum of money do you find from a

879

preponderance of the evidence would have been the reasonable cost at the time of and immediately after the fire in question, of repairing and replacing the household furniture in question, with material of like kind and quality, making allowance for such depreciation as you shall find from a preponderance of the evidence that it had undergone, located at 4713 Pershing Avenue, Fort Worth, Texas, lost and damaged by the fire in question, if you find it was so lost and damaged?" By answers to other issues the jury found that W. J. Blount was the duly authorized agent of appellant; prior to filing suit Blount, for the appellant, had denied liability on the policy; appellee submitted to Blount proof of loss and he accepted same and made no objections thereto, and that his acts constituted a waiver by appellant of further proof; appellee notified appellant of his lease to Engert prior to the fire; appellant collected balance due on premiums after it had knowledge of the lease to Engert, and that by so doing, appellant waived any objections it may have had to the lease of the property; appellee knew of his lease to Engert and that Engert was conducting a photograph business there, and that both the lease and business conducted therein were increased hazards, but that neither contributed to the loss by fire; the keeping by Engert of photograph negatives in the house increased the fire hazard, but that appellee did not know such were kept therein; that Bell agreed to sell the furniture to Engert, and the latter agreed to buy it, but that the furniture was not put into Engert's possession, by reason thereof; that Bell (appellee) was the sole and unconditional owner of the furniture at the time it was burned.

Appellant insists by its first group of propositions that the policy of insurance was voided under the stipulations therein, because the "undisputed" evidence shows appellee was not the sole and unconditional owner of the insured property at the time of the fire, and that its request for an instructed verdict should have been granted. Many authorities are cited in support of its contention that such limitation of liability as contained in the contract is valid and, when proven to be true, will defeat liability.

■ No useful purpose could be served by us in setting out the testimony of the witnesses bearing upon the question of whether or not appellee had sold the furniture to the Engerts. Both Mr. and Mrs. Engert testified they had purchased it from appellee

several months before the fire in October, 1935, and had paid for it. Appellee and his wife testified just as positively that no such sale was ever made; they said they had offered to sell the furniture to the Engerts for cash only, and the latter had said they wanted to buy, but several months passed before the date of the fire and it is not shown that the deal was ever consummated. It cannot be said, as contended by appellant, that the "undisputed" evidence showed appellee was not the sole and unconditional owner of the subject of the insurance; since this is an alleged fire insurance loss, we may say the testimony of the Engerts was "hotly" disputed by appellee and his wife. The issue was submitted to the jury and upon the conflicting evidence, a verdict was returned against appellant's contention. There was sufficient testimony upon which to base the jury verdict, and we cannot disturb it.

■ Another point relied upon by appellant goes to the court's action in admitting the testimony of appellee as to the values of the household goods destroyed, and in the submission of issue No. 1, from which the jury found the values to be $750. The objection urged to the introduction of the testimony was that it constituted the wrong measure of damages, and that the true measure was the difference in the value of the insured goods immediately prior to the fire and immediately thereafter. As a general proposition, the rule announced by appellant, in its objection, is correct. But where the goods are totally destroyed or even rendered wholly worthless, and the contract of insurance provides, as does this one, a different method of arriving at values will be employed.

■ The policy provided that in case of a total loss of the insured property, the company should not be liable beyond its actual cash value, at the time of the loss, with proper deductions for depreciation, and that its liability should in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. The contract also provided that the insured should make out and furnish to the company, immediately after the fire, a complete itemized list of all insured articles, together with their cost and values. This was shown to have been done and the appellee had before him this list and testified the items and values were true and correct; that the values named by him were what the items were worth to him, and were

the same as it would cost him to replace them with goods of like kind; that he had gone to furniture stores and procured the prices of articles exactly like those destroyed and that the values thus obtained were as he had testified. · As a matter of common knowledge, it is true that secondhand furniture, when offered for sale, has comparatively little cash or market value. In fact, it does not appear in this record that such articles had a market value at that time and place. This principle is recognized by the terms of the policy in its provisions that the amount should be determined by the cost of replacement, and that was proven, and the question submitted to the jury by the first special issue above quoted.

In Niagara Fire Ins. Co. v. Pool, Tex. Civ.App., 31 S.W.2d 850, writ dismissed, it was said (page 852): "Nor was it incumbent upon plaintiffs to show first that there was no market value of said property before they could prove intrinsic value. In the very nature of things personal effects composing the furnishings of a family and household do not, for the most part, have an ascertainable market value; and their value must of necessity be fixed by replacement cost, with due allowance for depreciation, or by their intrinsic value."

In Southern Natl. Ins. Co. v. Wood, 63 Tex.Civ.App. 319, 133 S.W. 286, the court had before it the same question now before us and there said (page 288): "She [appellee] testified that the value as thus given was the price that she paid for the same, and that she had used said articles from three to four years. When asked the market value of said goods, she said she did not know, but that they were worth to her what they cost. The policy was for $600 and the recovery was for that amount. * * * She was entitled to recover, not what she could have sold such secondhand goods for in the market, but their cash value to her; that is, what it would have cost to replace the same."

As early as German Ins. Co. v. Everett, Tex.Civ.App., 36 S.W. 125, courts were passing upon similar questions, and it was there said (page 127): "Household furniture and goods in use such as were covered by these policies are not generally on the market, and consequently may have no market value, unless they should be classed as secondhand goods. Such classification would be very unjust to the assured, for the very fact that goods are so classified often reduces their market value below what they are actually worth. What it would cost the appellee in cash, after the loss, to purchase property of like kind and quality as that destroyed would be a reasonable and equitable test of the damages sustained, as well as the cash value of the property lost." In view of the conditions mentioned and the provisions of the policy, we see no error in the admission of this testimony nor in the submission of the issue to the jury, and the assignments are overruled.

Other assignments go to the alleged breach of the contract by appellee, in that it was provided that no liability of appellant should attach if the fire hazard to the insured property should in any way be increased; that the leasing by appellee as well also the photograph business conducted on the premises by the lessee were shown to increase that hazard. By answers to special issues, the jury found that appellant was informed by appellee prior to the fire, that the premises had been leased to a tenant, and that thereafter appellant waived its right to complain by accepting the balance of unpaid premiums on the policy; these findings alone would preclude appellant from relying upon that particular exception in the policy.

There is another very sufficient reason why appellant cannot successfully defend its liability upon those grounds. The jury found in response to special issues that neither the leasing nor the conducting of photograph business on the premises contributed to the loss.

By article 4930, R. C. S., it is provided: "No breach or violation of the insured of any of the warranties, conditions or provisions of any fire insurance company, contract of insurance or application therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of property."

The above statutory provision was held binding and not in conflict with Constitution, article 3, section 35, by the Supreme Court, in McPherson v. Camden Fire Ins. Co., 222 S.W. 211, and it was there further held the statute was applicable to such risks as the one involved in the instant case. The above-quoted statute and many decisions construing it are cited in 24 Tex.Jur. p. 906, § 167, to which we also refer. The assignments must be overruled.

By its seventh, eighth, and ninth assignments, appellant insists that because of irreconcilable conflicts in the answers to special issues Nos. 16a and 17, a mistrial should have been ordered, rather than enter judgment for appellee. Special issue No. 16a and its answer were: "Do you find from a preponderance of the evidence that J. D. Bell (appellee) for a valuable consideration, agreed to sell, and Mrs. D. W. Engert agreed to buy, the furniture in question in July, 1935?" (This date was prior to the fire in October, 1935). The answer was: "Yes."

Special issue No. 17 and its answer, which it is claimed conflicted with No. 16a, are: "Was the plaintiff, J. D. Bell, on or about the 18th day of October, 1935, the date of the fire in question, the sole and unconditional owner of the property in question?" The answer is: "Yes."

Even to consider the two issues as submitted and answered, it is not conclusively shown there is a conflict in them. The most that is determined by No. 16a is that appellee proposed to sell and Engert offered to buy; but it is not found that the latter offered to purchase on the terms proposed by the former. The offer to sell could have been for a price and upon terms not acceptable to the buyer, and the same could be said of the offer to buy, yet the answer to the issue as made would be true. It could not be said under such conditions that ownership of appellee would be affected by such a negotiation. As stated in this opinion, under the first assignment discussed, the testimony on this point was just as conflicting as it could possibly be, and the jury found, in response to issue No. 17, that appellee was at the time of the fire the sole and unconditional owner of the insured furniture.

Appellant makes the point that because the furniture passed to the possession of the purported purchaser under the negotiations, the title and ownership were affected in a way as to bring it within the limitation provisions of the policy. We do not think the record supports the contention. It is undisputed that the possession of the furniture passed to the Engerts under a lease contract long prior to the time it is contended that they ever negotiated for its purchase, and there is nothing in the testimony to indicate there was any difference in the type of possession in Engert after he claims to have purchased. In fact, the question of possession by Engert was presented to the jury in special issue No. 16b, in this language: "Do you find from a preponderance of the evidence that such furniture as inquired about above (Issue No. 16a) was put into the possession of Mrs. Engert pursuant to said agreement?" The answer was: "No."

The effect of the three issues and their answers, then, is that Bell offered to sell and Engert offered to buy; the possession did not pass to Engert because of such offers, and that Bell was still the sole and unconditional owner when the fire occurred. We see no conflict in the answers to these issues. We are supported in these conclusions by Southern Casualty Co. v. Dyer, Tex.Civ.App., 22 S.W.2d 548, and cases there cited; the above authorities are referred to by appellee in his brief; we have examined them and find them applicable here.

For the reasons herein shown, all assignments of error are overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

In the motion by appellant for a rehearing in this case, our attention has been called to an error made by us in summing up the findings of the jury in response to special issues; we are requested to correct the mistake, which we gladly do. We stated in the original opinion that by the verdict, the jury found that "appellee notified appellant of his lease to Engert prior to the fire; appellant collected balance due on premiums after it had knowledge of the lease to Engert, and that by so doing, appellant waived any objections it may have had to the lease of the property." The statement by us that the jury found appellant waived its objection to the leasing is not accurate. Special issue No. 11 reads: "Do you find from a preponderance of the evidence that such collection of premiums, if any, by defendant, under the circumstances, constituted a waiver by defendant of all objections to the occupancy of the premises by the said lessee?" The answer was: "No." The erroneous statement above mentioned is here withdrawn.

However, in view of the findings by the jury in response to special issue No. 13–F that such occupancy of the premises by the tenant did not contribute to the loss in question, our views as expressed in the original opinion relative to appellees' right to recover on the policy would not be affected

by the error pointed out. The appellant is entitled to have the correction made.

We see no reason to change our ultimate conclusions as previously expressed, and with the correction herein contained, the motion for rehearing is overruled.