**INTERNATIONAL SERVICE INSURANCE COMPANY, Appellant,**

v.

**Ola Berry BRODIE et vir, Appellees.**

**No. 16115.**

Court of Civil Appeals of Texas.

Fort Worth.

June 17, 1960.

Rehearing Denied July 15, 1960.

Crowley, Wright, Miller & Garrett, William T. McGee and Kleber C. Miller, Jr., Fort Worth, for appellant.

Coleman & Whitten, and Earl L. Coleman, Denton, for appellee.

BOYD, Justice.

On trial to the court, Olga Berry Brodie recovered judgment against International Service Insurance Company for loss and damage to a house and its furnishings by fire, the loss being covered by a policy issued by said Insurance Company. From the judgment the Insurance Company appeals. Appellee Ola Berry Brodie will be referred to as Mrs. Brodie, and appellant will be referred to as the Company.

The policy provided that written sworn proof of loss should be rendered to the Company within 91 days after loss; and upon failure to agree as to the actual cash value or amount of loss, on written demand of either party, each should select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers were to select a competent, disinterested umpire, and then appraise the loss, stating separately actual cash value and loss to each item, and, failing to agree, they were to submit their differences only to the umpire. An award in writing, so itemized, of any two, when filed with the Company, would determine the amount of actual cash value and loss. The amount of loss was payable sixty days after proof of loss should be received by the Company and ascertainment of the loss made either by the insured and the Company, expressed in writing, or by the filing with the Company of an award.

Mrs. Brodie pleaded and here contends that the requirement for proof of loss and the provision for appraisal were waived by the Company, and these contentions were sustained by the trial court in its findings of fact and conclusions of law. By points of error the Company challenges these findings and conclusions.

■ Provisions of an insurance policy requiring proofs of loss and appraisal are inserted for the insurer's benefit and may be waived by it. Delaware Underwriters v. Brock, Tex.Civ.App., 206 S.W. 377; Manchester Fire Ins. Co. v. Simmons, 12 Tex.Civ.App. 607, 35 S.W. 722; Cooley's Briefs on Insurance, 2d Ed., Vol. 7, p. 5943; Reliance Ins. Co. of Philadelphia v. Nichols, Tex.Civ.App., 56 S.W.2d 479.

■ The fire occurred on Monday, November 17, 1958. The Company's local agent, who had issued the policy, was immediately notified, and he immediately notified the Company. The agent came to the premises on the day of the fire and viewed the damaged property. On the next day Mr. Russell, an adjuster for the Company, visited the premises and took measurements of the building and inspected the interior. On the next day he came and stayed all day. Mrs. Brodie invited him in and opened "the house up to him." Mrs. Brodie had made up a typewritten list of all the destroyed or damaged personal property of which she was aware at the time and gave Russell a copy of the list and discussed it with him. Russell that day talked to Mrs. Brodie's contractor and got his estimate of the loss to the building. Later Mrs. Brodie discovered that other articles had been destroyed or damaged, and she made a supplemental list and gave it to Russell. On his second visit to the premises, Russell "added up his figures" and told Mrs. Brodie "what it was." His figures were as to the damage to the personal property. He said he would submit to the Company the contractor's estimate as to the building damage, and later told Mrs. Brodie that the contractor's estimate was not acceptable.

Mr. Crews, another adjuster for the Company, came to the premises with Russell on two occasions, about December 8 and 15, 1958. On their first trip together the adjusters stayed from 9:00 or 10:00 A.M. until 3:00 or 4:00 P.M. Mrs. Brodie furnished them all the information they requested. That day the adjusters made an offer in settlement of the entire damage. The offer was not satisfactory to Mrs. Brodie. She testified: "Well, they left me this piece of paper (which was a form of proof of loss) and put the figures on it and told me that if I wanted to—that if I

signed that and sent it in that would be the settlement on it.

"Q. What figures was that? A. That was the figures that they offered me on my household goods and on my house.

"Q. And, as I understand it, you were not willing to sign it with those figures on it? A. No."

From Mrs. Brodie's cross-examination and an inspection of the proof of loss form, it would appear that the adjusters' figures were not in the blanks provided in the proof of loss.

"Q. So that they left this with you and told you to fill it in and swear to it and forward it to the company; is that correct? A. If I wanted to accept the figures that they had quoted me that afternoon, or that night." After this visit she had no further conversation with either Russell or Crews.

It appears that Crews wanted the proof of loss to show the agreed loss and damage. He testified:

"Q. You mean what we say it is, or what you all agree that it is? A. What it is agreed between all parties. * * * A proof of loss is an agreement, the agreed amount of loss and damage under the policy.

"Q. And that is what you think the proof of loss is; that is what you all interpret it as, isn't it? A. Yes, sir.

"Q. That once you finally agree on it, put that in there that then that is the figure that is paid? A. If it is agreed between all parties.

"Q. Well, what if it is not agreed? A. If it is not agreed?

"Q. Yes, sir. A. If proof of loss is filed and it is not agreed to?

"Q. Yes. A. It is rejected on various reasons for deficiency."

Since the only proof of loss which the Company would have accepted would have to reflect only the amount the Company was willing to pay, which amount Mrs. Brodie was not willing to settle for, we think the court could find that she was justified in assuming that no other proof of loss was demanded or expected.

■ There is another reason why we think the court's holding that proof of loss was waived must be sustained. It seems to be the rule that demand by an insurer for appraisal or arbitration is a waiver of written proofs of loss. Boston Ins. Co. v. Fitzpatrick, Tex.Civ.App., 75 S.W.2d 897; 14 R.C.L., p. 1353, sec. 524; 45 C.J.S. Insurance § 982(6) subd. f., page 1208. On January 30, 1959, the Company demanded an appraisal, and we think proof of loss was thereby waived.

The court found that the Company did not demand an appraisal within a reasonable time. This was an issue of fact, and we are of the opinion that the evidence supports the finding.

The court found that the written demand for an appraisal was not made until 72 days after the Company's adjuster viewed the premises and the parties disagreed as to the loss. The finding as to the time of the disagreement is challenged by the Company; but we think the Company admitted that the parties had failed to agree before December 22, 1958, more than thirty-nine days before the demand for appraisal was made.

Unwilling to accept the Company's offer, Mrs. Brodie on December 19, 1958, wrote its President and submitted a compromise figure. The letter was answered by Crews on December 22. In it he said: "It would be superfluous to enumerate to any extent the discussion of this claim on the two occasions that the writer was involved and the third conference which was conducted by Mr. E. A. Russell. In our opinion, there appears to be no item that has or will need a point of compromise." This is evidence of a failure to agree. The Company could then pay what Mrs. Brodie demanded, do nothing, or demand an appraisal. Mrs. Brodie's attorney wrote the Company on January 28, 1959, asking for payment and

advising that unless settlement was made suit would be filed "next week."

Crews' letter date January 30, 1959, demanded an appraisal and notified Mrs. Brodie's attorney that the Company named "Wallace Williams (Martin-Duvall Lumber Company) and Blackmon-Mooring Furniture & Rug Company, Fort Worth, Texas," as appraisers for the Company. The letter requested that Mrs. Brodie appoint "a competent and disinterested appraiser and to notify us in writing within 20 days from the date of this letter of said appointment, in order that the appraisers may proceed with the selection of a competent and disinterested umpire and with the appraisal of the loss in accordance with the terms and conditions of the policy."

█ We are of the opinion that the Company did not demand an appraisal "in accordance with the terms and conditions of the policy." It did not appoint "a" competent and disinterested appraiser, but appointed one individual and two companies. As to Blackmon-Mooring Furniture & Rug Company, Crews was asked if he meant to appoint the company as an appraiser. He answered, "The company.

"Q. The company itself? A. Yes, sir. * * * I named the company."

Crews further testified:

"Q. You name in your letter of January 30 Martin-Duvall Lumber Company, do you not, as one of the appraisers? A. Yes, sir." He testified that he did not know whether either company was a corporation, a partnership, or a group of individuals, and did not know where the members lived.

Mrs. Brodie might have been to some disadvantage had she been represented by one person who would have to cope with a galaxy of appraisers, if all of them could have been found. Besides, her appraiser would have just one vote. How many votes the Company's appraisers would have is not known. What is known is that an award concurred in by "any two" would "determine the amount of actual cash value and loss." It is our opinion that the procedure invoked by the Company was unwarranted and Mrs. Brodie was not required under the terms of the policy to submit to the delay, inconvenience, expense, and probable futility of such an appraisal. This suit was filed on March 12, 1959. The Company did nothing else toward having an appraisal in accordance with the terms of the policy.

█ "This clause of the policy (appraisal) was inserted wholly for the protection of the insurer. * * * But the insurer will not be permitted to use this clause oppressively, or in bad faith." Continental Ins. Co. v. Vallandingham & Gentry, 116 Ky. 287, 76 S.W. 22, 24. The insurer "must proceed promptly to take the necessary steps to have the amount of the loss adjusted as provided in the policy, * * *." Schouweiler v. Merchants' Mut. Ins. Ass'n, 11 S.D. 401, 78 N.W. 356, 357. Mrs. Brodie should not be maneuvered out of her right to recover the full loss by a demand that she submit to an appraisal which does not conform to the conditions set out in the policy. Reliance Ins. Co. of Philadelphia v. Nichols, supra. Moreover, it is not clear to us how a corporation, a partnership, or other group of individuals could be an appraiser under this policy. An appraiser is bound to exercise the highest degree of judicial impartiality. 45 C.J.S. Insurance § 1117, page 1360. He acts in a quasi-judicial capacity. 24-B Tex.Jur., p. 699, sec. 352. A corporation, partnership, or any other group of individuals which has been appointed to act as an appraiser would necessarily have to delegate the duty to an individual, and the delegation of an appraiser's duty is unauthorized.

The court found that: the actual cash value of the damaged and destroyed furniture and furnishings, with proper deduction for depreciation, was $3,600, and this amount would not exceed the cost to repair or replace such contents with material of like kind and quality; and the damage to

the building was $6,651.35, said sum being the reasonable cost of repairing and replacing the building with material of like kind and quality. By a group of points the Company asserts that, when the correct measure of recovery is applied, these findings are supported by no evidence, and in the alternative they are so against the weight and preponderance of evidence as to be manifestly wrong.

The policy provided that "liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, * * *."

Mrs. Brodie testified as to actual cash value or replacement cost of many of the items of personal property; opposite some items in the list she furnished the adjusters there appeared a figure representing repair cost. The list was introduced without detailed examination of the witness as to the items. She testified that where she listed the repair cost rather than cash value she did so because she and the adjusters agreed that those articles could and should be repaired. She said that in many instances it would cost more to replace the articles than their original cost. We think the evidence was competent to show the proper amount of recovery under the terms of the policy. German Ins. Co. v. Everett, Tex. Civ.App., 36 S.W. 125; Southern Nat. Ins. Co. v. Wood, 63 Tex.Civ.App. 319, 133 S.W. 286; Niagara Fire Ins. Co. v. Pool, Tex. Civ.App., 31 S.W.2d 850; Home Ins. Co. v. Ketchey, Tex.Civ.App., 45 S.W.2d 350; American General Ins. Co. v. Bell, Tex.Civ. App., 116 S.W.2d 877.

In the Niagara case the court said [31 S. W.2d 852]: "In the very nature of things personal effects composing the furnishings of a family and household do not, for the most part, have an ascertainable market value; and their value must of necessity be fixed by replacement cost, with due allowance for depreciation, or by their intrinsic value."

We have considered all the points and believe that error is not reflected.

The judgment is affirmed.