**BEVERLY FARM FOUNDATION, INCORPORATED, Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 97–2529, 97–3040.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1998.

Decided May 14, 1998.

Ross A. Friedman, Todd J. Aschbacher (argued), Susman, Schermer, Rimmell & Shifrin, St. Louis, MO, for Beverly Farm Foundation Incorporated.

Aileen A. Armstrong, Fred B. Jacob (argued), National Labor Relations Board, Appellate Court, Enforcement Litigation, Washington, DC, Kathleen C. Richmond, National Labor Relations Board, Region 14, St. Louis, MO, for National Labor Relations Board in docket 97–2529.

Aileen A. Armstrong, Fred B. Jacob (argued), National Labor Relations Board, Appellate Court, Enforcement Litigation, Washington, DC, Ralph R. Tremain, National Labor Relations Board, Region 14, St. Louis, MO, for National Labor Relations Board in docket 97–3040.

Before HARLINGTON WOOD, JR., EASTERBROOK and ROVNER,

HARLINGTON WOOD, JR., Circuit Judge.

The American Federation of State, County & Municipal Employees, Council 31 ("AFSCME Council 31" or the "Union") filed charges of unfair labor practices against Beverly Farm Foundation, Inc., ("Beverly Farm"), for various alleged anti-union actions and for declaring a premature impasse in negotiations. Finding that Beverly Farm had, indeed, engaged in several unfair practices in violation of the National Labor Relations Act (the "Act"), the National Labor Relations Board ("NLRB" or the "Board") ordered Beverly Farm to resume bargaining with the Union for a ten-month period. In this petition for review of the Board's decision, Beverly Farm asks us to determine whether the Board's factual determinations are supported by substantial evidence and argues that, at a minimum, the order to resume bargaining should have been made conditional on a new union election establishing that the Union retained majority support. Because we find the Board's findings supported by substantial evidence and its Order reasonable, non-punitive and consistent with

the objectives of the Act, we deny Beverly Farm's petition.

## I. BACKGROUND

Beverly Farm, a nonprofit Illinois corporation, operates residential treatment centers for mentally and physically disabled adults. On June 27, 1994, after winning an election by a vote of 274 to 47, the AFSCME Council 31 was certified as the collective-bargaining representative of some 370 of the 600 Beverly Farm employees. Negotiations between Beverly Farm and the Union began on August 8, 1994. Almost one year later, after nineteen bargaining sessions, Beverly Farm declared the negotiations at an impasse and presented its final offer to the Union on July 14, 1994. The Union rejected the offer and on November 8, 1994, Beverly Farm revoked its final offer and withdrew recognition of the Union. After the withdrawal of recognition, a recertification petition was filed by a group of employees sufficient in number to warrant an election and a complaint was filed with the NLRB.

Beverly Farm answered the complaint, admitting to the Board's jurisdiction, but denied committing any unfair labor practices as defined by the Act. An Administrative Law Judge ("ALJ") conducted a hearing on the consolidated complaint and found that Beverly Farm committed numerous violations of Sections 8(a)(5) and (1) of the Act. After reviewing the parties' exceptions and supporting briefs, the Board affirmed the ALJ's findings of fact and conclusions of law in their entirety, but modified the ALJ's order in accordance with *Indian Hills Care Center,* 321 NLRB 144 (1996).[1] Agreeing with the ALJ that Beverly Farm had violated Sections 8(a)(5) and (1) of the Act, the Board ordered Beverly Farm to cease and desist from further violations, retract its final offer, and restore recognition of the AFSCME Council 31 as the exclusive bargaining unit of its employees. The Order also required Beverly Farm to resume good-faith negotiations with the Union for no less than ten months. We have jurisdiction to review the Board's petition for enforcement and the Board's cross-application for enforcement under 29 U.S.C. §§ 160(e) and (f).

## II. DISCUSSION

On appeal, Beverly Farm raises eight issues for review, which we view as raising two primary claims: whether the Board's findings and conclusions that Beverly Farm violated Sections 8(a)(1) and (5) of the Act were supported by substantial evidence; and whether the Board's Order requiring Beverly Farm to resume bargaining for a ten-month period was an appropriate remedy.

### A. The Disputed Findings and Conclusions

▮▮▮▮ Beverly Farm objects to seven Board findings of fact which lead to the Board's conclusion that Beverly Farm engaged in unfair labor practices, in violation of Sections 8(a)(1) and (5) of the Act. We will uphold the Board's determinations if its factual findings are supported by substantial evidence in the record as a whole and its legal conclusions have a reasonable basis in the law. *NLRB v. Bestway Trucking, Inc.,* 22 F.3d 177, 180 (7th Cir.1994) (citing 29 U.S.C. § 160(e)) (other citations omitted). The "substantial evidence" test provides the agency with the benefit of the doubt because it does not require the degree of evidence which satisfies the court that the requisite fact exists, but merely that could satisfy a reasonable factfinder. *Allentown Mack Sales & Service, Inc. v. NLRB,* —— U.S. ——, 118 S.Ct. 818, 828, 139 L.Ed.2d 797 (1998).

▮▮▮▮ Section 7 of the Act guarantees employees the right to organize and to form, join, or assist labor organizations for the purpose of collective bargaining or other mutual aid or protection. 29 U.S.C. § 157. Section 8(a)(1) implements this guarantee by making it an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of their Section 7 rights. 29 U.S.C. § 158(a)(1). "An employer violates § 8(a) of the [Act] whenever the employer's actions have a reasonable tendency to interfere with or coerce employees in the exercise of their protected rights." *NLRB v. Gerig's Dump Trucking, Inc.,* 137

---

1. Those modifications were minor—providing more concrete notice and compliance directions—and are not relevant to any of the issues raised in this petition for review.

F.3d 936, 940 (7th Cir.1998) (citing *NLRB v. Q–1 Motor Express,* 25 F.3d 473, 477 (7th Cir.1994)).

### 1. The Declared Impasse and Refusal to Bargain

 The Act neither compels an agreement between employees and employers nor does the Act regulate the substantive terms governing wages, hours, and working conditions which are incorporated in an agreement. *NLRB v. American Nat. Ins. Co.,* 343 U.S. 395, 401–02, 72 S.Ct. 824, 828, 96 L.Ed. 1027 (1952). "The theory of the Act is that the making of voluntary labor agreements is encouraged by protecting employees' rights to organize for collective bargaining and by imposing on labor and management the mutual obligation to bargain collectively." *Id.* at 402, 72 S.Ct. at 828. Moreover, the Act does not encourage a party to engage in fruitless marathon discussions and the Board may not, either directly or indirectly, compel concessions or otherwise sit in judgment upon the substantive terms of collective bargaining agreements. *Id.* When a legally cognizable impasse occurs the employer is free to implement changes in employment terms unilaterally so long as the changes have been previously offered to the union during bargaining. *See P.R.C. Recording Co. v. NLRB,* 836 F.2d 289, 292–93 (7th Cir.1987). The touchstone for determining whether a genuine "impasse" or "deadlock" existed at the time the employer instituted unilateral changes is the absence of any realistic possibility that continuation of the negotiations would have been fruitful. *ConAgra, Inc. v. NLRB,* 117 F.3d 1435, 1444 (D.C.Cir.1997).

 The parties had met nineteen times between August 8, 1994, and July 14, 1995, when Beverly Farm declared an impasse and refused to ,continue bargaining. The Board found that Beverly Farm declared an impasse prematurely and wrongfully refused to bargain in violation of Sections 8(a)(5) and (1) of the Act. Beverly Farm argues that the Board erred in finding it improperly declared an impasse because the parties were at loggerheads; the parties had met for over a year and were still so far apart on certain key economic and noneconomic issues that continued bargaining appeared fruitless. Both the ALJ and the Board disagreed.

In its Order, the Board states that although the parties had met on nineteen previous occasions there was not an impasse because sixteen of those bargaining sessions had been exclusively devoted to noneconomic issues. The Board reasoned that in light of the limited negotiations on economic issues and the Union's continued flexible bargaining posture, reflected by its assurance to management that a strike was unlikely, Beverly Farm's declaration of an impasse was premature. The history of the negotiations supports the Board's findings that Beverly Farm declared a premature impasse in the negotiations and then wrongfully refused to bargain with the Union.

The Union proposed its first wage proposal on May 25, 1995. Beverly Farm did not present its economic counter-proposal until June 21, 1995. Shortly thereafter, the Union responded with an amended economic proposal on July 6, 1995. On July 14, 1995, just one week later, Beverly Farm responded to the Union's amended proposal by delivering its last, best, and final offer. When the employees voted to reject the final offer on July 27, 1995, Beverly Farm unilaterally implemented some of the terms and conditions in its final offer.

On August 4, 1995, the Union sent a letter to Beverly Farm indicating that it had new proposals to submit and requesting further negotiations. In response, Beverly Farm requested that the Union submit its new proposals in writing. The Union refused on the grounds that Beverly Farm was attempting to impose the illegitimate requirement that the Union negotiate by mail.

The crux of Beverly Farm's argument with respect to its declared impasse is that the Board did not give sufficient weight to the duration and number of bargaining sessions between the parties. It argues that the Board minimized the fact that it had negotiated in good faith for over a year and that during that period nineteen individual bargaining sessions with the Union had failed to resolve significant differences between the parties with respect to both economic and noneconomic issues. We find that, contrary to Beverly Farm's assertion, the Board carefully considered the fact that Beverly Farm and the Union had been in

negotiations for over one year. Specifically, in its order the Board states: "[t]ypically, if negotiations do not produce an agreement after that length of time, one might conclude that the parties are at an impasse for 'the duty to bargain does not require a party to engage in fruitless marathon discussions.'" 323 NLRB No. 147, 1997 WL 294690 (citing *NLRB v. American National Insurance Co.*, 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952)). However, the Board found that under the circumstances presented here, there were insufficient grounds to declare an impasse. Although a finding of a bargaining impasse might have been reasonable under these facts, we cannot say that the Board's findings, regarding the viability of continued negotiations, were not supported by substantial evidence or that the Board's conclusion, that Beverly Farm had declared a premature impasse, was an unreasonable interpretation of Sections 8(a)(5) and (1) of the Act. Section 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of [its] employees." 29 U.S.C. § 158(a)(5). It was reasonable for the Board to conclude that Beverly Farm's unilateral implementation of parts of its final offer, in the absence of a valid impasse, constituted a violation of the Act.

The Board also found that Beverly Farm violated Sections 8(a)(5) and (1) when it twice refused to resume bargaining with the Union despite the Union's request to resume bargaining and its submission of new proposals. In support, the Board stated that even if a genuine impasse existed on July 27, 1995, when the employees rejected Beverly Farm's final offer, the Union's August 4 letter obligated Beverly Farm to resume direct negotiation with the Union. *See NLRB v. U.S. Cold Storage Corp.*, 203 F.2d 924 (5th Cir. 1953) (holding that an employer who insists on negotiating by mail or that a union submit its proposals in writing has unlawfully refused to bargain). The Board's finding that Beverly Farm wrongfully refused to bargain was supported by substantial evidence.

*2. Withdrawal of Union Recognition*

■■■■■ · Absent unusual circumstances, an employer is obligated to recognize and bargain with a validly certified union for a reasonable period, ordinarily one year following certification, regardless of any changes in the majority status of the union. *Brooks v. NLRB*, 348 U.S. 96, 98–104, 75 S.Ct. 176, 178–82, 99 L.Ed. 125 (1954). During the certification year, the union enjoys a conclusive presumption of majority support. *Bryant & Stratton Bus. Institute, Inc. v. NLRB*, 140 F.3d 169, 186 (2d Cir.1998). After the certification year, an employer may rebut the presumption of a union's continuing majority support and withdraw recognition of the union if it can show either that the union in fact no longer had the support of a majority of the unit employees at the time the employer withdrew recognition, or that the employer had a reasonable good-faith doubt as to the union's continued majority status. *See id.; NLRB v. Hi–Tech Cable Corp.*, 128 F.3d 271, 278–79 (5th Cir.1997). In the past, Board decisions have "muddied the waters" with respect to the appropriate standard an employer must meet in meeting his burden of proving a "reasonable good-faith doubt." *See Allentown Mack Sales & Service, Inc.*, 118 S.Ct. at 827 (finding that Board decisions using the language "clear, cogent, and convincing evidence" incompatible with its stated preponderance of the evidence standard in determining an employer's "reasonable good-faith doubt"). *Allentown* teaches that the Board cannot reject or discount probative evidence that tends to establish the existence of a good-faith doubt, otherwise appropriate under a preponderance of the evidence standard, by applying a stricter evidentiary standard than that which it has promulgated. *Id.*, 118 S.Ct. at 826–28.[2] However, even if an employer claims a "reasonable good-faith

2. *Allentown* was decided four days after oral argument was heard in this case. In response to questioning at oral argument regarding the significance of *Allentown* on these proceedings, supplemental materials were filed pursuant to Circuit Rule 28(j). Although Beverly Farm points to the Court's recognition of the "preponderance of the evidence" standard for establishing a reasonable good-faith belief for withdrawal of recognition, that determination has no bearing on this case. Beverly Farm did not challenge the evidentiary standard applied by the Board and it did not allege that the Board excluded probative evidence in its determination of a "reasonable good-faith doubt." Moreover, a review of the record fails to reveal that the Board excluded any relevant, probative evidence or that it confused the fact-finding process by confusing the "preponderance" standard with a higher one. No-

doubt" in the union's continuing support, the employer cannot lawfully withdraw recognition from the union if it has committed yet unremedied unfair labor practices that could have reasonably tended to contribute to employee disaffection from the union. *Hi–Tech Cable,* 128 F.3d at 279.

■ On November 8, 1995, Beverly Farm notified the Union that it was withdrawing its final offer and · withdrawing recognition. When asked by the Union on what basis it was withdrawing recognition Beverly Farm responded that it had become apparent from the lack of employee participation in Union-sponsored activities that the majority of the unit employees no longer favored the Union. In testimony before the ALJ, a Beverly Farm officer testified that no more than 12 of the 180 to 225 unit employees, on duty at the time, took part in informational picketing on June 14, 1995, and that by November 8, 1995, only three or four employees wore green union T-shirts and hats on designated "Union Appreciation Days."

The Board concluded that Beverly Farm's doubts were not well-founded and were unreasonable. First, the Board pointed to Beverly Farm's failure to bargain in good faith by calling a premature impasse and the fact that Beverly Farm for months ignored its duty to bargain once the Union articulated its intent to return to the bargaining table. Second, citing *Colonna's Shipyard,* 293 NLRB 136, 140 (1989) and *Robinson Bus Service,* 292 NLRB 70, 78 (1988), the Board noted that Beverly Farm's purported observation of low employee participation in Union events occurred during the certification year and even if the low participation had been after the certification year, the workers' failure to participate in greater numbers is not a reliable symptom of disaffection. The Board reasoned that given Beverly Farm's "studied indifference" to the Union, its unilateral implementation of terms of employment previ-

ously rejected by a majority of the unit members and its refusal to meet and bargain with the Union, the employees' absence from Union-sponsored events "could reflect nothing more than reluctance to publicly brand themselves union proponents." Thus, the Board's finding that Beverly Farm failed to meet its burden of proof that majority support for the Union had collapsed by November 8, 1995, is supported by substantial evidence.

Furthermore, the Board reasonably concluded that Beverly Farm improperly withdrew recognition of the Union in violation of Sections 8(a)(5) and (1) of the Act. Most of the events alleged to establish a lack of union support came after a period when Beverly Farm refused to bargain, and during this very same period Beverly Farm committed unfair labor practices, suggesting that its behavior enabled it to undermine the Union. In addition, the Board found that many of Beverly Farm's actions constituting unfair labor practices took place during the certification year. Under the circumstances of this case, we feel the Board properly concluded that Beverly Farm was not able to rely on the employees' inaction to excuse its illegal behavior and its withdrawal of recognition violated Sections 8(a)(5) and (1) of the Act. *See Hi–Tech Cable,* 128 F.3d at 279 (holding that the temporal proximity between the unfair labor practices and the withdrawal of recognition allows for a conclusion that employees' display of disaffection for their union might have been induced by the company's unlawful actions).

Beverly Farm also objects to the Board's findings that Beverly Farm engaged in several separate and independent Section 8(a)(1) unfair labor practices.[3] We find Beverly Farm's arguments to be without merit and, thus, do not address them. We also note that the Board found the independent Section 8(a)(1) incidents isolated and not pervasive and did not use them as a basis for its

where in its analysis of whether Beverly Farm unlawfully withdrew recognition does the Board use language such as "clear," "cogent," or "convincing," which the Court took issue with in *Allentown.* Thus, we find *Allentown* inapplicable to the issues raised here.

**3.** Most of these claims involve credibility determinations. This court has consistently held that "it is the function of the Administrative Law Judge and the Board to make credibility determinations, not this Court." *NLRB v. Gogin,* 575 F.2d 596, 604 (7th Cir.1978) (quoting *NLRB v. Townhouse T.V. and Appliances, Inc.,* 531 F.2d 826, 829 (7th Cir.1976)).

order extending the certification period an additional ten months.

## B. The Order to Resume Bargaining

Section 10(c) of the Act directs the Board to develop remedies which will carry out the policies of the Act. See 29 U.S.C. § 160(c). In reviewing the legal propriety of this order, we begin with the fundamental proposition that, in fashioning remedies for violations of the Act, "the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by the reviewing courts." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 612, 89 S.Ct. 1918, 1939, 23 L.Ed.2d 547 (1969). At the same time, we have noted that, "while the Board is given wide leeway in fashioning remedies, the remedy chosen must 'achieve the remedial objectives which the Act sets forth.'" *Yorke v. NLRB*, 709 F.2d 1138, 1144–45 (7th Cir.1983) (quoting *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 9–11, 61 S.Ct. 77, 78–79, 85 L.Ed. 6 (1940)). The remedy "must not punish the employer for its violations." *Id.* at 1145. In the wake of the Supreme Court's decision in *Gissel*, "there is a consensus among the courts of appeals that the imposition of a bargaining order as a remedy is strong medicine and is to be implemented with the utmost care." *Ron Tirapelli Ford, Inc. v. NLRB*, 987 F.2d 433, 439 (7th Cir.1993).

Here, the Board explicitly rejected the Union's request for a *Gissel* bargaining order. Instead, the Board decided to extend the Union's one-year certification period an extra ten months, from the resumption of renewed collective bargaining, because Beverly Farm had engaged in unfair labor practices that interfered with the Union's representation. Specifically, the Order required Beverly Farm to cease and desist from engaging in further unfair labor practices, to recognize and commence bargaining with the Union for at least another ten months, and to post copies of a remedial notice.

Beverly Farm objects to the requirement that it resume good-faith negotiations with the Union for at least another ten months. Beverly Farm argues that it did not violate Section 8(a)(5) of the Act and, therefore, an order to resume bargaining cannot stand, even if certain of its actions violated Section

8(a)(1). Alternatively, Beverly Farm argues that at a minimum the Board's Order should be modified to make the resumption of bargaining contingent on the results of a Board-supervised election.

We reject Beverly Farm's arguments. First, the Board's findings that Beverly Farm violated Sections 8(a)(5) and (1) of the Act are supported by substantial evidence. Second, the Board's decision to order Beverly Farm to resume bargaining with the Union for an additional ten months was an appropriate remedy, well within the broad discretion granted to the Board under Section 10(c) of the Act. See 29 U.S.C. § 160. We have recognized that "[e]nsuring meaningful bargaining comports with the primary objective of the Act." *Yorke*, 709 F.2d at 1145.

In this case, based on findings and conclusions supported by substantial evidence, the Board determined that several Beverly Farm activities constituted unfair labor practices, that it declared a premature impasse during negotiations, and that it improperly withdrew recognition of the Union. The Board also found that Beverly Farm failed to sufficiently support its claim that the Union no longer had the support of a majority of Beverly Farm's workers. If the Board entered only a cease-and-desist order, it would in effect be rewarding Beverly Farm and allowing it to profit from its own wrongful refusal to bargain. The Board's Order did not punish Beverly Farm, rather, it merely required Beverly Farm to engage in meaningful collective bargaining with its employees' representative, as contemplated by the Act.

## III. Conclusion

For the reasons stated above, we DENY REVIEW and ENFORCE the Board's Order in its entirety.