**In re UNIVERSAL UNDERWRITERS OF TEXAS INSURANCE COMPANY, Relator.**

No. 10–0238.

Supreme Court of Texas.

Argued Dec. 8, 2010.

Decided May 6, 2011.

Don Martinson, Rebecca Raper, Fanning Harper Martinson Brandt & Kutchin, P.C., Dallas, TX, for Relator Universal Underwriters of Texas Insurance Company.

Scott M. Keller, The Law Offices of Scott M. Keller, Robert Nathan Grisham, The Law Offices of Robert N. Grisham II, Dallas, TX, for Real Party in Interest Grubbs Infiniti, Ltd.

Wade Caven Crosnoe, Thompson Coe Cousins & Irons, L.L.P., Austin, TX, for Amicus Curiae Insurance Council of Texas and Property Casualty Insurers.

Peter M. Kelly, Kelly Durham & Pittard LLP, Houston, TX, George (Tex) Quesada, Sommerman & Quesada, L.L.P., Dallas, TX, James B. Lewis, Lewis & Hildebrand

PC, Houston, TX, for Amicus Curiae Texas Trial Lawyers Association.

Brendan K. McBride, The McBride Law Firm, San Antonio, TX, for Amicus Curiae Texas Apartment Assoc., Inc., Texas Assoc. of School Boards.

William F. Merlin Jr., Merlin Law Group, P.A., Houston, TX, for Amicus Curiae United Policyholders.

Gardner C. Pate, Locke Lord Bissell & Liddell LLP, Austin, TX, for Amicus Curiae Texas Building Owners and Managers Association.

Howard M. Bookstaff, Hoover Slovacek LLP, Houston, TX, for Amicus Curiae Houston Apartment Association, Inc. ("HAA").

Karen Phillips, Texas Automobile Dealers Association, Austin, TX, for Amicus Curiae Karen Phillips.

Connie Niemann Heyer, Niemann & Niemann, L.L.P., Austin, TX, for Amicus Curiae Texas Community Association Advocates.

Chief Justice JEFFERSON delivered the opinion of the Court.

Appraisal clauses, a common component of insurance contracts, spell out how parties will resolve disputes concerning a property's value or the amount of a covered loss. When the parties disagree, but neither seeks appraisal until one has filed suit, has the party demanding appraisal waived its right to insist on the contractual procedure? Because we conclude that, absent conduct indicating waiver and a showing of prejudice, it has not, we conditionally grant relief.

I. Background

Grubbs Infiniti, a car dealership in the Dallas–Fort Worth area, suffered hail damage to buildings on its property. When Grubbs filed a claim with its insurer,

Universal Underwriters, a claims representative inspected the property. Universal subsequently paid Grubbs $4,081.95 for the damage. Grubbs asked Universal to reinspect the property, contending that the claim had not been properly investigated or fully paid. Universal sent an engineer to reinspect the property, after which it issued a $3,000 supplemental payment to cover scuff marks on the roof. In November 2008, Universal explained that

> [i]f you would like to have your roof expert discuss the findings with [the engineer], please advise and we will put the two parties in touch with one another. We will hold our file open for 15 days pending any further contact from you regarding this matter.
>
> . . . .
>
> . . . Should you disagree with [Universal's] decision as set forth in this letter, please review your policy and govern yourself accordingly being mindful of the policy requirement that legal action contesting [Universal's] decision on this claim must be brought within 24 months and 1 day from the date you discover the loss, but no sooner than 90 days after you file a sworn proof of loss.
>
> Please feel free to contact me . . . if you should have any questions.

Universal also sent Grubbs a copy of the engineer's roof inspection report. Grubbs made no further inquiries or demands for payment.

Four months later, Grubbs sued Universal for underpayment of its claim, alleging breach of contract, breach of the duty of good faith and fair dealing, as well as violations of the Deceptive Trade Practice–Consumer Protection Act, Insurance Code, and Prompt Payment of Claims Act. In response, Universal invoked the policy's appraisal clause, which provides, in pertinent part,

> [i]f YOU or WE can't agree on the value of the property or the amount of YOUR property LOSS, either of us can demand in writing, an appraisal within 20 days of such demand. Then, each will select a competent and disinterested appraiser who will, in turn, select a competent and disinterested umpire. . . .
>
> The appraisal shall be then made at a reasonable time and place. Each appraiser will state his appraisal of the value or LOSS. If they can't agree, they will submit their differences to the umpire. The value of the property or amount of the LOSS will be determined by a written agreement of any two of them. Such an agreement is binding.

Universal moved to compel an appraisal and to abate all other proceedings in the interim. Grubbs alleged that Universal waived its right to appraisal by not invoking it sooner. When the trial court denied the motion, Universal unsuccessfully sought mandamus relief from the court of appeals. 345 S.W.3d at 412. Universal petitioned this Court,[1] and, after hearing oral argument, we conditionally grant relief.

## II. Waiver of appraisal clauses

Appraisal clauses, commonly found in homeowners, automobile, and property

---

1. The Insurance Council of Texas and Property Casualty Insurers Association of America submitted a brief of amici curiae in support of Universal. The Texas Apartment Association, Inc., the Texas Association of School Boards Legal Assistance Fund, and the Texas Organization of Rural & Community Hospitals, joined by the Houston Apartment Association, the Texas Building Owners and Managers Association, and United Policyholders, submitted a brief of amici curiae in support of Grubbs, as did the Texas Trial Lawyers Association, the Texas Automobile Dealers Association, and the Texas Community Association Advocates.

policies in Texas, provide a means to resolve disputes about the amount of loss for a covered claim. *See State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 888 (Tex. 2009). These clauses are generally enforceable, absent illegality or waiver. *See id.* (" 'In the absence of fraud, accident, or mistake, the parties having agreed that the amount of loss shall be determined in a particular way, we are constrained to hold that such stipulation is valid.' "(quoting *Scottish Union & Nat'l Ins. Co. v. Clancy,* 71 Tex. 5, 8 S.W. 630, 631 (1888))). Appraisals can provide a less expensive, more efficient alternative to litigation, and we recently held that they "should generally go forward without preemptive intervention by the courts." *Id.* at 895.

Indeed, appraisals have proceeded for well over a century with little judicial involvement. *Id.* at 889 (noting that only five of our prior decisions involved appraisals). Of our three cases to address waiver of appraisal clauses, only one found that waiver had actually occurred. *See Del. Underwriters v. Brock,* 109 Tex. 425, 211 S.W. 779, 780–81 (1919) (waiver due to insurer's selection of biased arbitrator, in violation of the policy); *Am. Cent. Ins. Co. v. Bass,* 90 Tex. 380, 38 S.W. 1119, 1119–20 (1897) (same); *Scottish Union,* 8 S.W. at 632 (no waiver). In that case, we held that an insurer could not claim as a defense that the insured failed to submit to an appraisal because the insurer did not nominate a "disinterested appraiser" as the policy required. *Brock,* 211 S.W. at 780.

■ We have explained that

[to] constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss.

*Scottish Union,* 8 S.W. at 632. Or, as we more recently concluded, "[w]aiver requires intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *In re Gen. Elec. Capital Corp.,* 203 S.W.3d 314, 316 (Tex.2006) (quotations omitted).[2]

■ Grubbs asserts that Universal waived its right to invoke appraisal by waiting eight months, from the date that Grubbs asked for a reinspection of its property to the date that Grubbs sued, before demanding an appraisal. Grubbs argues that this delay was unreasonable as a matter of law, citing a number of cases in which our courts of appeals found appraisal demands untimely when made as little as thirty-nine days from the date of disagreement. *See, e.g., Int'l Serv. Ins. Co. v. Brodie,* 337 S.W.2d 414, 416 (Tex.Civ.App.-Fort Worth 1960, writ ref'd n.r.e.) (noting that the parties disputed whether it had been thirty-nine or seventy-two days from the date of disagreement); *Boston Ins. Co. v. Kirby,* 281 S.W. 275, 276 (Tex.Civ.App.-Eastland 1926, no writ) (noting that insur-

---

**2.** *See also Dwyer v. Fid. Nat'l Prop. & Cas. Ins. Co.,* 565 F.3d 284, 288 (5th Cir.2009) ("The district court incorrectly homed in on the interval between the appraisal request and the trial date. The appropriate waiver inquiry examines Fidelity's knowledge and action— when Fidelity knew that the appraisal clause could be invoked, whether it reacted timely to the knowledge."); *Round Rock Indep. Sch. Dist. v. First Nat'l Ins. Co.,* 324 F.2d 280, 284

(5th Cir.1963) (quoting *Scottish Union* ); *Rolison v. Puckett,* 145 Tex. 366, 198 S.W.2d 74, 78 (1946) ("A waiver is the intentional relinquishment of a known right,—or, . . . acts as would warrant inference of the relinquishment of such right."); *In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 563 (Tex. App.-Houston [14th Dist.] 2010, no pet.) (quoting *Scottish Union* ).

er waited fifty-eight days after receiving proof of loss to make demand for appraisal); *Am. Fire Ins. Co. v. Stuart*, 38 S.W. 395, 396 (Tex.Civ.App.1896, no writ) ("The retention of the proofs of loss by appellant for an unreasonable time without objection would be a waiver of any defect therein."). These decisions, however, were not based solely on the length of delay, but rather on the parties' conduct, as indications of waiver.[3] In *Brodie*, for example, after several attempts to reach a settlement, the insurer wrote to the insured that "[i]t would be superfluous" to further enumerate the claims, and that "there appears to be no item that has or will need a point of compromise." *Brodie*, 337 S.W.2d at 416. The court concluded that "[t]his [wa]s evidence of a failure to agree. The Company could then pay what Mrs. Brodie demanded, do nothing, or demand an appraisal." *Id.* The fact that thirty-nine or seventy-two days had passed during their negotiations was not determinative of the waiver issue. Instead, the expression of the parties' unwillingness to negotiate further indicated that the clause should have been invoked. In other words, while the time period may be instructive in interpreting the parties' intentions, it alone is not the standard by which courts determine the reasonableness of a delay. *See Equitable Life Assurance Soc. v. Ellis*, 105 Tex. 526, 152 S.W. 625, 629 (1913) ("A waiver may be created by acts, conduct, or declarations." (quotations omitted)); *Scottish Union*, 8 S.W. at 632 (describing the kind of "acts relied on" that constitute waiver).

## A. Delay must be measured from the point of impasse.

■■■ Thus, while an unreasonable delay is a factor in finding waiver, reasonableness must be measured from the point of impasse, as several cases have recognized. *See In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 562 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (holding that "the date of disagreement, or impasse, is the point of reference to determine whether a demand for an appraisal is made within a reasonable time"); *see also Sanchez v. Prop. & Cas., Ins. Co. of Hartford*, No. H–09–1736, 2010 WL 413687, at *5, 2010 U.S. Dist. LEXIS 6295, at *13–14 (S.D.Tex. Jan. 27, 2010) ("The proper point of reference for determining whether an insurer waived the right to invoke appraisal by delay is the point at which the insurer knew the appraisal clause could be invoked because of a disagreement over the amount of damages, that is, the point of impasse with the insured."). That requires an examination of the circumstances and the parties' conduct, not merely a measure of the amount of time involved in seeking appraisal.

An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal. Nor does an insurer's offer of money to cover damages necessarily indicate a refusal to negotiate further, or to recognize additional damages upon reinspection. *See Scottish Union*, 8 S.W. at 632.

**3.** In *Boston Insurance Company v. Kirby*, 281 S.W. 275, 276 (Tex.Civ.App.-Eastland 1926, no writ), the court did not describe what acts may have constituted waiver, but held that "[t]here [wa]s sufficient evidence in the record to support the finding" of the jury that the delay had been "unreasonable." Without further elaboration from the Court, we presume that the evidence presented to the jury included some evidence of the parties' conduct beyond the mere stipulation that fifty-eight or fifty-nine days had passed from the date that the insurer received proof of loss. To the extent the case may have been decided on the length of delay alone, we disapprove of that holding.

Texas state and federal courts have cited a federal district court case from Iowa, *Terra Industries, Inc. v. Commonwealth Insurance Co. of America*, 981 F.Supp. 581 (N.D.Iowa 1997), for its analysis of the point of "impasse" in insurance negotiations. *See Tran v. Am. Econ. Ins. Co.*, No. H–10–0016, 2010 WL 2680616, at *2–3, 2010 U.S. Dist. LEXIS 66283, at *6–7 (S.D.Tex. July 2, 2010); *Sanchez*, 2010 WL 413687, at *4, 2010 U.S. Dist. LEXIS 6295, at *11; *Laas v. State Farm Mut. Auto. Ins. Co.*, No. 14–98–00488–CV, 2000 WL 1125287, at *5–7, 2000 Tex.App. LEXIS 5332, at *16–18 (Tex.App.-Houston [14th Dist.] Aug. 10, 2000, no pet.) (not designated for publication). The *Terra* court looked to other jurisdictions for insight in determining at what point an insurer has waived its appraisal right and formulated the following factors:

> In deciding whether a demand for appraisal was made within a reasonable time, and consequently has not been waived even if suit was filed before the demand was made, courts have considered the timeliness of the demand in light of the circumstances as they existed at the time the demand was made. Pertinent circumstances include (1) the time between the breakdown of good faith negotiations concerning the amount of the loss suffered by the insured and the appraisal demand; and (2) whether there would be any prejudice to the other party resulting from the delay in demanding an appraisal.

*Id.* at 602 (citation omitted). In *Terra*, despite two and a half years of negotiations, "and evident dispute," *id.* at 601, the court found that the insurer "had no notice that an impasse had been reached, because only the filing of [the insured]'s suit demonstrated [the insured]'s unilateral conclusion that the parties were at an impasse." *Id.* at 603.

Other courts have relied on *Terra* to measure the point of impasse at which parties are to invoke appraisal clauses. *See, e.g., Lyon v. Am. Family Mut. Ins. Co.*, 617 F.Supp.2d 754, 760 (N.D.Ill.2009); *Rebel Tractor Parts, Inc. v. Auto–Owners Ins. Co.*, No. CV206–102, 2006 U.S. Dist. LEXIS 86502, at *8 (S.D.Ga. Nov. 28, 2006); *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*, No. 01 Civ.9291, 2003 WL 1344882, at *1, 2003 U.S. Dist. LEXIS 3881, at *4 (S.D.N.Y. Mar. 18, 2003). Using the point of "impasse," rather than the first sign of disagreement, corresponds with our definition of waiver as an "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *In re GE Capital*, 203 S.W.3d at 316 (quotation omitted). In other words, both parties must be aware that further negotiations would be futile, "or would be of no effect if performed." *Scottish Union*, 8 S.W. at 632. If one party genuinely believes negotiations to be ongoing, it cannot have intended to relinquish its right to appraisal (unless it expressly waives it). *See Keesling v. W. Fire Ins. Co.*, 10 Wash.App. 841, 520 P.2d 622, 627 (1974) (finding no waiver where, "insofar as the record shows, until the insured filed suit, the frame of mind of both parties welcomed additional communications and negotiations rather than confrontation").

The definition of impasse as the apparent breakdown of good-faith negotiations is supported in another context as well, which we find persuasive in our analysis. Under the National Labor Relations Act, 29 U.S.C. § 151, an employer may implement unilateral changes in employment terms only after good-faith negotiations have been exhausted, and the parties have reached an "impasse." *Beverly Farm Found. v. NLRB*, 144 F.3d 1048, 1052 (7th Cir.1998); *Taft Broadcasting Co.*, 163 N.L.R.B. 475, 478 (1967). The United

States Supreme Court has defined impasse under these circumstances as "that point at which the parties have exhausted the prospects of concluding an agreement and further discussions would be fruitless." *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 544, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988); *see also Beverly Farm Found.*, 144 F.3d at 1052 ("The touch-stone for determining whether a genuine 'impasse' or 'deadlock' existed ... is the absence of any realistic possibility that continuation of the negotiations would have been fruitful.").

■■■■ Universal invoked appraisal within a reasonable time after the parties reached an impasse. The policy contained no time limit for the appraisal request, and Universal never denied liability for the loss. At no point did Grubbs notify Universal that it refused to discuss the matter further, despite Universal's statement that it would leave its file open for further discussions should Grubbs care to do so. Whether Universal was aware of Grubbs' disagreement as to the estimate of damages is also irrelevant, since mere disagreement does not in itself signal an unwillingness to negotiate further. *See NLRB v. Cent. Plumbing Co.*, 492 F.2d 1252, 1254 (6th Cir.1974) ("[M]ere rejection of a bargaining proposal does not create an impasse."); *Lyon*, 617 F.Supp.2d at 759 n. 8 ("[T]he relevant event is not the existence of a difference of views as to the loss amount, but rather the parties' inability to resolve that difference despite their attempts to do so."). Once the parties have reached an impasse—that is, a mutual understanding that neither will negotiate further—appraisal must be invoked within a reasonable time. Here Universal sought appraisal approximately one month after Grubbs sued. We conclude that Universal demanded appraisal within a reasonable time after the parties reached an impasse.

■■■■ Grubbs contends that, because Universal's correspondence included a provision alerting the insured of the statute of limitations on bringing suit, Universal effectively acknowledged that the parties were at an impasse ("... being mindful of the policy requirement that legal action contesting Universal Underwriter's decision on this claim must be brought within 24 months and 1 day from the date you discover the loss ...."). Universal counters that its letters included no statements regarding waiver of appraisal, or any suggestion that it was not open to further negotiation. To the contrary, it "specifically reserve[d] its rights under both the laws of the State of Texas and the terms of the subject policy of insurance." Moreover, Universal stated that it would leave the file open should Grubbs want to pursue further discussions. We will not infer waiver where neither explicit language nor conduct indicates that such was the party's intent.

*Scottish Union* is again instructive. In that case, the insurer conducted an inspection in response to the insured's claim and offered its calculation of damages. 8 S.W. at 630. When the parties disagreed on their estimates, the insurer offered an amount in settlement. *Id.* The insured declined the offer, then brought suit. *Id.* When the insurer demanded appraisal, the insured argued that the insurer had waived its right to do so. *Id.* at 631. We held that the insurer's attempt at reaching a settlement did not constitute a refusal to pay the loss: "It does not appear that [the insurer] at any time denied its liability or refused to pay whatever amount of loss and damage might be determined in the manner required by the policy to be due." *Id.* at 632. As such, it had not waived its

appraisal right. The same reasoning applies here.

### B. Delay alone is not enough; a party must also show prejudice.

Even if Universal had waited to request appraisal, mere delay is not enough to find waiver; a party must show that it has been prejudiced. *See* 15 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 210:77 (3d ed. 1999) ("In addition, a waiver will not be declared where there has been no showing of prejudice to the other party by a delay in demanding an appraisal."); *Terra*, 981 F.Supp. at 602 (requiring courts to examine "whether there would be any prejudice to the other party resulting from the delay in demanding an appraisal"). If the insured has suffered no prejudice due to delay, it makes little sense to prohibit appraisal when it can provide a more efficient and cost-effective alternative to litigation. Of course, prejudice to a party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position. *See, e.g., Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex. 2008) (defining prejudice for purposes of waiver of arbitration as "the inherent unfairness in terms of delay, expense, or damage to a party's legal position" (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004))); *see also In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 47 n. 5 (1st Cir.2005) ("[A] party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." (*quoted in Perry Homes*, 258 S.W.3d at 597)); *Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir.1995) (finding prejudice where party "incurred expenses as a direct result of [opponent's] dilatory behavior").

We have, in other instances, required a showing of prejudice to establish waiver. *See, e.g., In re ADM Investor Servs.*, 304 S.W.3d 371, 374 (Tex.2010) ("A party waives a forum-selection clause by substantially invoking the judicial process to the other party's detriment or prejudice."); *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex.2008) (per curiam) (" '[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice.' " (alteration in original) (quoting *Perry Homes*, 258 S.W.3d at 589–90)); *In re Automated Collection Techs.*, 156 S.W.3d 557, 559 (Tex.2004) (per curiam) (" '[E]ven substantially invoking the judicial process does not waive a party's arbitration rights unless the opposing party proves that it suffered prejudice as a result.' " (quoting *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex.1998))).

In the context of waiver of arbitration clauses, which is in some ways similar to waiver of appraisal, we also require a showing of prejudice. *See Prudential Sec. v. Marshall*, 909 S.W.2d 896, 898–899 (Tex. 1995) ("A party does not waive a right to arbitration merely by delay; instead, the party urging waiver must establish that any delay resulted in prejudice."). In addition, we require an insurer to show prejudice before it can deny coverage based on an insured's failure to comply with a policy's "as soon as practicable" notice provision. *See Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 382 (Tex.2009) (noting that, because the insurer "admitted that it was not prejudiced by the delay in receiving notice, it could not deny coverage based on [the insured's] alleged failure to provide notice 'as soon as practicable' ").

█ Other jurisdictions have recognized that there can be no appraisal waiver absent a showing of prejudice to the other party. *See, e.g., Kester v. State Farm Fire & Cas. Co.*, 726 F.Supp. 1015, 1019–20

(E.D.Pa.1989); *Meineke v. Twin City Fire Ins. Co.,* 181 Ariz. 576, 892 P.2d 1365, 1371 (Ariz.Ct.App.1994) ("Among the circumstances courts consider are the timing between the breakdown of good faith negotiations concerning the amount of the loss suffered by the insured and the appraisal demand, and whether any prejudice to the other party resulted from the delay in demanding an appraisal."); *Sch. Dist. v. Globe & Republic Ins. Co.,* 146 Mont. 208, 404 P.2d 889, 893 (Mont.1965) ("Whether a demand for appraisal has been made within a reasonable time depends upon the circumstances of each case. An examination of the cases involving this issue reveals that principally, two factors have been decisive: prejudice resulting from the delay, and the breakdown of good-faith negotiations concerning the amount of loss." (citations omitted)). Because the prejudice requirement aligns with our own analysis of waiver in arbitration and other insurance contexts, we find it useful here as well. In order to establish waiver, therefore, a party must show that an impasse was reached, and that any failure to demand appraisal within a reasonable time prejudiced the opposing party.

Grubbs has not attempted to show prejudice here. Instead, Grubbs contends that requiring prejudice would be "new law," and because no Texas cases have required such a showing, we should not impose such a requirement. But waiver is an equitable doctrine,[4] and we have frequently required a showing of prejudice before concluding that rights are waived. *See, e.g., In re E.I. du Pont de Nemours & Co.,* 92 S.W.3d 517, 524 (Tex.2002) (holding that delay did not waive defendant's right to dismissal, as

plaintiffs "failed to show how the delay ... prejudiced them in any way"); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex. 1996) (per curiam) (noting that party waives right to arbitration only if party seeking to enforce agreement substantially invoked the judicial process to the other party's detriment). Our failure to explicitly require prejudice is more a function of the paucity of cases in which we have addressed waiver of appraisal than its inapplicability to the doctrine.

Moreover, it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself. This could short-circuit potential litigation and should be pursued before resorting to the courts.

## III. Propriety of mandamus relief

■■ We have held that mandamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim. *In re Allstate Cnty. Mut. Ins. Co.,* 85 S.W.3d 193, 196 (Tex.2002). There, as here, "the parties ... agreed in the contracts' appraisal clause to the method by which to determine whether a breach has occurred," and, if the appraisal determined that the full value was what the insurer offered, there would be no breach of contract. *Id.* The same is true here. We conditionally grant the writ of mandamus and direct the trial court to grant Universal's motion to compel appraisal.[5] *See id.* (holding that refusal to order appraisal would "den[y] the

---

4. *See Pacheco v. Rice,* 966 F.2d 904, 906 (5th Cir.1992); *Baker v. Fort Worth Mut. Benevolent Ass'n,* 115 Tex. 300, 280 S.W. 165, 169 (1926).

5. The trial court's failure to grant the motion to abate is not subject to mandamus, and the proceedings need not be abated while the appraisal goes forward. *See In re Allstate Cnty. Mut. Ins. Co.,* 85 S.W.3d 193, 196 (Tex. 2002).

development of proof going to the heart of a party's case and cannot be remedied by appeal"). We are confident the trial court will comply, and our writ will issue only if it does not.

Justice LEHRMANN did not participate in the decision.